UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: | CASE NO. 07-21678 (ASD) |
| LYNNE C. DRAKE, | CHAPTER 7 |
| DEBTOR. | |
| ANTHONY S. NOVAK, TRUSTEE, | ADV. PRO. NO. 08-02118 (ASD) |
| PLAINTIFF, | |
| VS. | RE: ECF NOS. 40 & 45 |
| LYNNE C. DRAKE, ALLSTATE LIFE INSURANCE COMPANY, AND ALLSTATE SETTLEMENT CORPORATION,[1] | |
| DEFENDANTS. | |

APPEARANCES:

Edward C. Taiman, Jr., Esq.                Counsel for Plaintiff-Trustee
Lobo & Novak, LLP,
280 Adams Street
Manchester, CT 06042


Joel M. Grafstein, Esq.                    Counsel for Defendant-Debtor
10 Melrose Drive
Farmington, CT 06032


**MEMORANDUM OF DECISION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

[1]Pursuant to a Consent Order approved by the Court on April 27, 2009, ECF No. 21, Allstate Life Insurance Company and Allstate Settlement Corporation were excused from further participation in this Adversary Proceeding but were required to pay into the registry of the bankruptcy court certain monthly structured settlement payments that are the subject of the dispute herein. *See Amended Order for Deposit of Interpleader Funds . . .* , ECF No. 28, and discussion, *infra*, pp. 3-4.

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I.  INTRODUCTION

In this adversary proceeding for turnover of property pursuant to Bankruptcy Code Sections 542 and 543, Anthony S. Novak, the Chapter 7 Trustee (hereinafter, the "Trustee"), is through his counsel, prosecuting an Amended Complaint, ECF No. 8, against Lynne C. Drake, the debtor in Bankruptcy Case No. 07-21678, and defendant in this proceeding (hereinafter, the "Debtor"), seeking to recover for the benefit of the bankruptcy estate, monthly payments due to the Debtor as beneficiary under an annuity contract issued by Allstate Life Insurance Company (hereinafter, "Allstate Life"). Both the Trustee and the Debtor have filed motions for summary judgment as to the Amended Complaint.[2] For the reasons stated hereinafter, the Trustee's Motion for Summary Judgment shall be granted and the Debtor's Motion for Summary Judgment shall be denied.

## II. PROCEDURAL BACKGROUND

On November 21, 2007, the Debtor commenced this bankruptcy case by filing a voluntary petition under Chapter 7 of the United States Bankruptcy Code.  She received her discharge on February 19, 2008.  On December 29, 2008, the Trustee commenced the instant adversary proceeding by filing a two-count complaint (hereinafter, the "Complaint"), ECF No. 1, naming the Debtor and Allstate Life as defendants. The Complaint sought to recover from the Debtor all annuity payments received by the Debtor from Allstate Life under annuity contract no. 90803220 from the period of December 2007 through November 2008, in the amount of $3,000, or a judgment against the Debtor for said

---

[2]The Amended Complaint contains two counts, the first relates to Defendants Allstate Life and Allstate Settlement Corporation; the second, to the Debtor.

amount, and a turnover order compelling Allstate Life to pay to the Trustee all annuity payments owed by Allstate Life to the Debtor from December 1, 2008 through April 23, 2023, all of which are alleged to be property of the bankruptcy estate. An Amended Complaint, filed on January 27, 2009, adds a defendant, Allstate Settlement Corporation (hereinafter, "Allstate Settlement"), and an amendment to the prayer for relief demanding that all future annuity payments be turned over to the Trustee by Allstate Settlement, rather than by Allstate Life (collectively, hereinafter, "Allstate").  Both the Complaint and Amended Complaint acknowledge that as of December 1, 2008, at the request of the Trustee, the annuity payments otherwise due to the Debtor have been suspended. On March 22, 2009, the Debtor filed an *Answer to Allegations of Plaintiff* (hereinafter, the "Debtor's Answer"), ECF No. 16, which includes therein, *inter alia*, an affirmative defense claiming that the funds to be paid by Allstate are not property of the bankruptcy estate.[3]

On February 26, 2009, an *Answer of Allstate Life Insurance Company and Allstate Settlement Corporation with Counterclaim and Crossclaim for Interpleader*, ECF No. 13, was filed by Allstate.  On April 22, 2009, Allstate entered into a Consent Order with the Trustee and the Debtor, whereby Allstate disclaimed any interest in the annuity payments and was discharged from further participation in the instant adversary proceeding and from any liability to the Debtor, Trustee or any other party, conditioned upon Allstate  paying in to the bankruptcy court registry each month the previously suspended annuity payments and all future payments until such time as the Court determines in a final order or judgment

---

[3]The numbered paragraphs of the Debtor's Answer appear to correspond to the Complaint, rather than to the Amended Complaint.  Nevertheless, the Debtor's Answer will be treated herein as an Answer to the Amended Complaint since the allegations in both the Complaint and the Amended Complaint concerning the Debtor are effectively the same.

the proper payee. The Consent Order was approved by Court on the April 27, 2009, ECF No. 21. It was thereafter amended by adding a direction to the Clerk of the United States Bankruptcy Court to deposit the payments received into an interest-bearing savings account and as amended, was approved by the Court on May 21, 2009. ECF No. 28.

On March 31, 2011, the Debtor filed a *Motion for Summary Judgment* (hereinafter, the "Debtor's Motion"), ECF No. 40, a *Memorandum of Law in Support of Her Motion for Summary Judgment, ECF* No. 41, a *Stipulation to Facts* (hereinafter, the "Stipulation"), accompanied by an Exhibit A, entitled "Uniform Qualified Assignment", and an Exhibit B, entitled "Allstate Life Insurance Company, Single Premium Immediate Life Annuity**."** ECF No. 42. Thereafter, on April 29, 2011, the Trustee filed a *Plaintiff's Motion for Summary Judgment* (hereinafter, the "Trustee's Motion"), ECF No. 45, and a *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and In Support of Plaintiff's Motion for Summary Judgment*. ECF No. 44.[4] The Trustee's Motion and the Debtor's Motion are ripe for resolution.

### III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. §1334(b). The instant proceeding is a "core" proceeding pursuant to 28 U.S.C. §§157(b)(2)(E), which this Court has the authority to hear and determine on reference from the District Court pursuant to 28 U.S.C. §§157(a), (b)(1) and the District Court's General Order of Reference dated September 21,

---

[4]The *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for Summary Judgment,* ECF No. 44, also accompanied the Trustee's Motion and was docketed as ECF No. 45-1.

1984. This Memorandum of Decision contains the findings of fact and conclusions of law required by Fed. Bankr. R. 7052 and Fed R. Civ. P. 52.

## IV.  SUMMARY JUDGMENT PROCEEDINGS

*A.    Summary Judgment Standards*

Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment shall enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When ruling on motions for summary judgment "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding a summary judgment motion, the court "'cannot try issues of fact, but can only determine whether there are issues of fact to be tried.'" *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (*quoting Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962)). The moving party has the burden of showing that there are no material facts in dispute and all reasonable inferences are to be drawn, and all ambiguities resolved in favor of the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003).  The same standard of review applies when the court is dealing with cross-motions for summary judgment. Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is being considered.

*Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001)*.*

B.    *Local Rule 56(a) and the Stipulation of Facts*

Local Rule 56(a) of the Local Civil Rules of the United States District Court for the District of Connecticut supplements Fed. R. Civ. P. 56(c) by requiring statements of material fact from each party to a summary judgment. In the present matter, having filed the Stipulation, the Debtor and the Trustee are in material compliance with Local Rule 56.

The following consists of the verbatim material facts agreed to between the Debtor and Trustee in the Stipulation[5]:

1. On or about April 3, 1998, Madeline K. D'Abato ("Mrs. D'Abato") entered into a settlement agreement and release (the "Settlement Agreement"), funded by a Uniform Qualified Assignment (Exhibit A) with Great American Insurance Company ("Great American"), and its insured, Allstate Life Insurance, in resolution of Mrs. D'Abato's personal injury claim.

2. The Settlement Agreement required that Great American make the following periodic payments to Mrs. D'Abato:

    monthly payments of $500.00 beginning May 1, 1998 and continuing through and including April 1, 2023 guaranteed, and for the life of Mrs. D'Abato thereafter; and

    life contingent monthly payments of $500.00, beginning May 1, 1998. (Collectively, the payments described above shall be referred to as the "Periodic Payments.")

---

[5]Hereinafter, for simplicity and clarity, abbreviated terms and phrases as used in the Stipulation are adopted by the Court.

3. As permitted by the Settlement Agreement, Great American executed a "qualified assignment" (the "Qualified Assignment") within the meaning of Section 130(c) of the Internal Revenue Code, whereby Great American assigned to Allstate Settlement Corporation ("Allstate Settlement") the obligation to make the Periodic Payments to Mrs. D'Abato.

4. As contemplated by the Settlement Agreement, the Periodic Payments are funded by way of an annuity contract No. 90803220 (the "Annuity") (Exhibit B), which was issued by Allstate Life Insurance Company ("Allstate Life") (Allstate Settlement and Allstate Life are collectively, "Allstate").

5. The Annuity provides that the payments are:

"NON-ASSIGNABLE-payments may not be anticipated, assigned or pledged as collateral. Payment dates and amounts may not be changed, either to provide for earlier payment or longer deferral. The contract has no cash surrender or policy loan value. So far as the law allows, all payments to any person named by ASC [Allstate Settlement Corporation] to receive them are exempt from that person's creditors, debts and contracts, and from seizure or attachment by court order or other legal process." Annuity Page 4.

6. On or about September 3, 2004, Mrs. D'Abato died.

7. Following Mrs. D'Abato's death and pursuant to the Settlement Agreement, the monthly guaranteed Periodic Payments in the amount of $500.00 each have been issued and split equally between Gail Walsh and bankruptcy debtor, Lynne C. Drake ("Debtor"), daughters of Mrs. D'Abato.

8. On or about November 21, 2007, the Debtor commenced this Chapter 7 bankruptcy proceeding by filing a Chapter 7 Voluntary Petition.

9. The Periodic Payments were not identified as property in the schedules attached to Debtor's Voluntary Petition.

10. While Schedule I of Debtor's Voluntary Petition identifies an "annuity" as providing monthly income, it does not specifically identify the Periodic Payments.

11. Trustee, Anthony S. Novak, later deposed Debtor, learned of the Periodic Payments and made claim to portions of certain Periodic Payments.

12. The Debtor disclosed income under Statement of Affairs, paragraph 2 for 2007 in the amount of $1,200.00.

13. The Trustee makes no claim to any portion of the Periodic Payments except the portion to be issued to Debtor, which amounts to monthly payments of $250.00 through and including April 1, 2023.

14. Allstate has paid Debtor's portions of the Periodic Payments in the amount of $250.00 each, beginning with the Periodic Payment due December 1, 2008 (the "Suspended Periodic Payments") and is paying those sums into the court registry pending the outcome of this Adversary Proceeding.

Neither the Debtor nor the Trustee has asserted that there are any material facts that are disputed so as to bar the entry of Summary Judgment for either party.

## V. DISCUSSION

All legal and equitable interests of a debtor in property as of the commencement of the case become property of the bankruptcy estate pursuant to Bankruptcy Code §541(a). The scope of this section is very broad. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203-204, 103 S. Ct. 2309, 2312-2313 (1983)*; Whetzal v. Alderson*, 32 F.3d 1302, 1303 (8th Cir. 1994). A debtor's interest in property becomes property of the estate "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law - (A)

that restricts or conditions transfer of such interest by the debtor." §541(c)(1)(A). An exception to this rule appears in §541(c)(2) which states, "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." In *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S. Ct. 2242 (1992), the United States Supreme Court stated, "The natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan [ERISA] or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law."

The Debtor maintains that the Annuity is not property of the estate because the contract created a spendthrift trust. The Debtor refers in particular to the provision of the Annuity which states, "So far as the law allows, all payments to any person named by ASC [Allstate Settlement Corporation] to receive them are exempt from that person's creditors, debts and contracts, and from seizure or attachment by court order or other legal process." Stipulation, ¶5; Exhibit B, Annuity Page 4. It is the Trustee's position that notwithstanding this anti-alienation provision, the Annuity is not a "trust" under Nebraska law and therefore does not fit within the §541(c)(2) exception.

While federal law controls whether the Debtor's interest in the Annuity is property of the estate, Nebraska law defines the nature and extent of the interest. *In re MJK Clearing, Inc.*, 371 F.3d 397, 401 (8th Cir. 2004); *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir. 1985) ("The nature and extent of the debtor's interest in property are determined by state law . . . [but] once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate"). In this case, it is the law of Nebraska that governs: "This Agreement shall be governed by and interpreted in accordance with the laws of the

9

State of Nebraska." Exhibit A to Stipulation, (Uniform Qualified Assignment) ¶5; Trustee's Memorandum of Law, p. 2; Debtor's Memorandum of Law p. 4; *In re Hupton*, 287 B.R. 438, 442-443 (Bankr. N.D. Iowa 2002). ("Generally, when considering the exclusion of annuities from the bankruptcy estate under §541(c)(2), courts apply the law of the state where the funds are situated. *Drewes v. Schonteich*, 31 F.3d 674, 677 (8th Cir. 1994)"). Unfortunately for the Debtor, while spendthrift trusts are recognized as valid and enforceable against creditors of the beneficiary, see *First National Bank of Omaha v. Cadco Corporation*, 189 Neb. 734, 205 N.W. 2d 115 (1973), the Court is unaware of, and the parties have failed to cite, any case in Nebraska in which the court has held that a structured settlement is properly characterized as a trust. On the other hand, a number of courts elsewhere (see discussion at pp. 13-14, *infra*), have held that annuity contracts entered into as settlements of personal injury claims even with anti-alienation provisions should be characterized as structured settlements and/or annuity contracts but not as trusts.

The absence of relevant Nebraska case law may be a consequence of the fact that in 1987, that state adopted an exemption provision making structured settlements exempt from bankruptcy estates.[6] Thereafter, courts in Nebraska have simply assumed that structured settlements are property of the bankruptcy estate, considering only whether the terms of the particular settlement bring it within the language of the exemption statute.[7] See

---

[6]Nebraska has opted out of the federal exemptions. Bankruptcy Code §522(b); R.R.S. Neb. §25-15,105. ("The State of Nebraska elects to retain the personal exemptions provided under Nebraska statutes and the Nebraska Constitution and to have such exemptions apply to any bankruptcy petition filed in Nebraska after April 17, 1980.")

[7]Under Nebraska exemption statute R.R.S. §*25-1563.02, inter alia*, (applicable to residents of Nebraska only), all proceeds and benefits accruing under a structured settlement that are made as compensation for personal injuries or death are exempt from claims of creditors of the beneficiary or the beneficiary's surviving dependents. However, even if the Debtor had been eligible to claim the exemption, no evidence has been submitted suggesting that the Debtor was a "dependent" at the time of her mother's death. Further, the fact that Nebraska chose to adopt such a statute suggests a belief by the legislature that without such an exemption, structured settlements would be property of a bankruptcy estate.

10

*In the Matter of Diers*, 320 B.R. 166 (Bankr. D. Neb. 2004); *In the Matter of Key*, 255 B.R. 217 (Bankr. D. Neb. 2000); *In the Matter of Borgmann,* 176 B.R. 172 (Bankr. D. Neb. 1994)*; In the Matter of Rhea*, 335 B.R. 428, 430 (Bankr. D. Neb. 2004); *In re Tate*, Neb. Bkr. 92:393 (Bankr. D. Neb. July 27, 1992) and *In re Hitch*, Neb. Bkr. 89:451 (Bankr. D. Neb. August 31, 1989).

The state of Nebraska at R.R.S. Neb. §25-3301 *et. seq.*, along with most other states, (including Connecticut, at Conn. Gen. Stat. §52-225f *et. seq.*), has adopted variations of the Structured Settlements Transfers Protection Act. The purpose of the Act is to protect structured settlement recipients involved in the process of transferring structured settlement payment rights. R.R.S. Neb. §25-3102. A structured settlement is defined therein as "an *arrangement* for periodic payment of damages for personal injuries or sickness established by a settlement, agreement or judgment in resolution of a tort claim." R.R.S. Neb. §25-3103(9) (emphasis added). The interested parties to a structured settlement are described in the Act as "(a) The payee; (b) Any beneficiary irrevocably designated under the annuity contract to receive payments following the payee's death . . . ; (c) The annuity issuer; (d) The structured settlement obligor; and (e) Any other party that has continuing right or obligations under the structured settlement." R.R.S. Neb. §25-3103(6).

Similar language is used to describe the parties to the Single Premium Life Annuity and the accompanying Uniform Qualified Assignment issued in this case. Mrs. D'Abato is variously described as the "Claimant" or "payee," Great American Insurance Company is the Assignor," Allstate Settlement Corporation is the "Assignee", Allstate Life Insurance Company is the "Annuity Issuer" and Mrs. D'Abato's daughter, Lynne Drake, the Debtor, is one of two named "beneficiaries." While a trust does not necessarily have to use trustee

language to be considered a trust, the intent to create a trust must be clear from the documents. "Whether a trust has been created is a question of fact." *Tipp v. Reinbrecht*, 273 Neb. 59, 68, 438, 727 N.W. 2d 430 (2007). While an annuity can be a trust, "there must be evidence that the parties had the specific intent to create a trust." *In re Streigel*, 131 B.R. 697, 701 (S.D. Ind. 1991).

> In order to create a trust, it must clearly appear that such was the intention of the parties. *Crancer v. Reichenbach*, 130 Neb. 645, 266 N.W. 57. Ordinarily a trust is not created where the transaction is as consistent with another relationship as with that of a trust. *O'Connor v. Burns, Potter & Co.*, 151 Neb. 9, 36 N.W. 2d 507.

*Rankin v. City National Bank of Crete*, 182 Neb. 224, 153 N.W. 2d 869 (1967).

Nowhere in the documents relevant to this proceeding does the word "trust" or "trustee" appear. By contrast, the words "annuity" and "contract" appear throughout the documents that make up the agreement. As an example, the first two sentences of the entitled, Single Premium Immediate Life Annuity, p.1, state, "CONTRACT-This contract is issued to Allstate Settlement Corporation (called "ASC") in consideration of the application, a copy of which is attached, and the payment of the single premium. The contract and the application are the entire contract."

The documents contain no specific fiduciary language.[8] On the contrary, the Uniform Qualified Assignment states that "[t]he Claimant (Mrs D'Abato) has no rights against the Assignee (Allstate Settlement) greater than a general creditor." ¶3. No one is designated as "trustee" and there is no identifiable trust res because Allstate Settlement is the owner of the Annuity. "All rights of ownership and control of such annuity contract shall be and remain vested in the Assignee exclusively." ¶6. "One characteristic of a trust that is relevant

---

[8]"A trust . . . is a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a manifestation of an intention to create it." *Parker v. Bourke*, 131 Neb. 617, 269 N.W. 102 (1936).

12

here is that a trust beneficiary 'has an equitable interest in the subject matter of the trust, and in its proceeds if it is disposed of, which gives him priority over the claims of the general creditors of the trustee . . .' Restatement (Second) of Trusts §74 cmt. a (1959)." *In re Hanes*, 162 B.R. 733 (Bankr. E.D. Va. 1994).

The Debtor, as the Claimant's beneficiary, "has a purely contractual interest in the periodic payments arising from [the agreements]. . . .The annuity payments . . . are nothing more than interval payments made on an underlying debt, which represents payments on account of personal bodily injury." *In re Simon*, 170 B.R. 999, 1002 (Bankr. S.D. Ill. 1994) (internal citations omitted). In *In re Walters*, 172 B.R. 283, 286 (Bankr. W.D. Mo. 1994), the court similarly characterized a structured settlement as a "contractual right", and stated further:

> The nature of debtors' interest can be described as a present right to receive future payments . . . .The interest of the debtors in property as of the commencement of the case includes interests not subject to possession until some future time. Therefore, I find that any future periodic lump-sum payments which debtors will receive as a result of the Agreement are property of the bankruptcy estate. (citation omitted).

Numerous other courts have concluded that structured settlements including those with anti-alienation language are not trusts and therefore are property of the bankruptcy estate. *See*, *In re Hendrickson*, 274 B.R. 138, 148 (Bankr. W.D. Pa. 2002); *In re Britton*, 288 B.R. 170, 173 (Bankr. N.D.N.Y. 2002); *In re Constantino*, 274 B.R. 580 (N.D.N.Y. 2002); *In re Cooper*, 135 B.R. 816, 820 (Bankr. E.D. Tenn. 1992); *In re Dees*, 155 B.R. 238, 240 (1992); *In re Striegel*, 131 B.R. 697 (S.D. Ind. 1991); *In re Riley*, 91 B.R. 389, 391 (Bankr. E.D. Va. 1988). *But see*, *In re Gouns*, 2002 Bankr. LEXIS 1736 at *46-47 (Bankr. E.D. KY) (December 19, 2002).

The Debtor also claims that even if the Court determines that the Annuity is not a

13

spendthrift trust, the Court must make a determination that the amount of payments to be made to the creditor are in an equitable amount, citing the Uniform Trust Act. 128 UTC §501 cmt. (2005). Since the Court holds that the Annuity is not a trust, this provision is inapplicable.

### VI. CONCLUSION

In accordance with the forgoing discussion, the Plaintiff-Trustee's Motion for Summary Judgment on the Amended Complaint is **GRANTED**; the Motion of the Defendant-Debtor for Summary Judgment is **DENIED**. A separate Judgment shall enter simultaneously herewith.

Dated: March 29, 2012                                                                                         BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge